#### IN THE UNITED STATES DISTRICT COURT FOR THE
#### EASTERN DISTRICT OF VIRGINIA
#### Alexandria Division

| | |
|---|---|
| **JOSE DENIS CARDONA TEJADA,** ) | |
| **Petitioner,** ) | |
| ) | |
| v. ) | Civil Action No. 1:21-cv-314 |
| ) | |
| **JEFFREY CRAWFORD,** *et al.*, ) | |
| **Respondents.** ) | |

#### ORDER

Petitioner Jose Denis Cardona Tejada, a native of Honduras, has lived in the United States with his nine-year-old U.S. citizen daughter and her mother since October 2005. That year, Petitioner fled Honduras and came to the United States because his brother had been murdered by MS-13 gang members in Honduras. Since Petitioner's arrival in the United States in October 2005, Petitioner has started a new life in Richmond, VA with his family.

Ten years after Petitioner's arrival in the United States, Immigration Customs Enforcement ("ICE") determined, in November 2015, that Petitioner was an inadmissible alien, arrested him, and initiated removal proceedings. At this initial stage of Petitioner's removal proceedings, an Immigration Judge released Petitioner from ICE custody on a $10,000 bond pursuant to 8 U.S.C. § 1226(a), as detention of a non-citizen pending removal proceedings is purely discretionary under the Immigration Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*[1] While released on bond, Petitioner incurred two driving while intoxicated ("DWI") offenses, specifically, on September 23, 2017 and October 21, 2018.[2] Petitioner also did not appear for an immigration proceeding, as

---

[1] *See, e.g.*, *Guzman Chavez v. Hott*, 940 F.3d 867, 873 (4th Cir. 2019) (explaining that "§ 1226 permits discretionary release on bond"); 8 U.S.C. § 1226(a)(2) (same); 8 C.F.R. § 236.1 (same).

[2] Since his arrival in the United States in 2005, Petitioner has been charged with three DWIs. Specifically, on February 10, 2011, Petitioner was convicted of an initial DWI offense and sentenced to 10 days imprisonment. On November 14, 2017, Petitioner was convicted of a second DWI offense and sentenced to 20 days imprisonment. On April 23,

1

he did not receive notice of the hearing. On April 23, 2019, the day after Petitioner was acquitted at his bench trial for the October 21, 2018 DWI charge, ICE re-arrested Petitioner and brought him to the Farmville Detention Center, where he has been detained ever since.

Following his arrest on April 23, 2019, Petitioner sought bail before an Immigration Judge. Three months later, on July 25, 2019, Petitioner appeared before an Immigration Judge for a bail hearing. The Immigration Judge denied bail in a conclusory one-page Order that reasons, in full, "Danger to Community and Flight Risk." IJ Bail Decision at 2 (Dkt. 1-5). Thus, it is clear that the Immigration Judge denied bail chiefly (1) because Petitioner had been previously charged or convicted of DWI or other driving offenses[3] and (2) because Petitioner did not appear for an immigration hearing for which he did not receive notice.[4]

As of the date of this Order, there is no definitive end date to Petitioner's now-extended 25-month ICE detention. Petitioner's removal proceedings have been ongoing since November 22, 2015, and most recently, on May 3, 2021, the Immigration Judge determined, for a second time, that Petitioner is eligible for withholding of removal from the United States because the Honduran government cannot (or will not) protect Petitioner from deadly MS-13 gang violence. *See* IJ Withholding of Removal Decision at 13 (Dkt. 19-1). Respondents intend to appeal the Immigration Judge's withholding of removal decision to the Board of Immigration Appeals ("BIA"), and there is no telling when this appellate process might end. For instance, if the BIA

---

2019, following a bench trial, Petitioner was acquitted on his third DWI charge. Thus, Petitioner has incurred a total three DWI charges but has only been convicted of two DWIs.

[3] Petitioner previously served 30 days in state prison for his DWI offenses. The statutory maximum sentence applicable to Petitioner's DWI convictions is a one-year term of imprisonment. *See* Va. Code § 18.2-270(A) and (F) (listing a second DWI conviction as a Class 1 misdemeanor); *see also* Va. Code § 118.2-11(a) (listing the maximum penalty for a Class 1 misdemeanor as twelve months imprisonment). Petitioner also has two driving with revoked license convictions from 2015, as well as dismissals and acquittals for other non-violent offenses.

[4] Notably, the Immigration Judge subsequently reopened Petitioner's immigration proceedings, crediting Petitioner's argument that he did not receive notice of the proceedings.

sides with Respondents and vacates the Immigration Judge's decision, the BIA will likely remand the matter back to the Immigration Judge for a third time, and the removal process will begin anew. Alternatively, if the BIA sides with Petitioner and affirms the Immigration Judge's decision, Respondents will likely appeal the matter to the Fourth Circuit Court of Appeals and then perhaps to the Supreme Court. Indeed, at oral argument, in response to repeated questioning, Respondents' counsel did not refute or disagree with the suggestion that it was possible that Petitioner could be held for years because there is no certain end date to Petitioner's detention. Thus, it is apparent that Petitioner's detention is indefinite, as there is no firm end date to Petitioner's detention.[5]

At issue now in this habeas corpus action is whether the Fifth Amendment's Due Process Clause affords Petitioner the right to a current bond hearing before an Immigration Judge to challenge the necessity and appropriateness of his now-extended 25-month detention under 8 U.S.C. § 1226(a). Previously, in *Bah v. Barr*, 409 F. Supp. 3d 464 (E.D. Va. 2019) and *Leke v. Hott*, -- F. Supp. 3d --, 2021 WL 710727 (E.D. Va. Feb. 23, 2021), this Court determined that detention of this exact sort violates the Fifth Amendment's Due Process Clause because (1) the

---

[5] Respondents argue that Petitioner's detention is not *literally* indefinite because there technically is a potential end point to Petitioner's detention: i.e., Petitioner's removal from the United States, an event which may or may not occur. *See* 8 U.S.C. § 1231(b)(3) (prohibiting the United States from removing an alien to a country in which he will be persecuted). Respondents' narrow definition of "indefinite detention" contradicts the central holding of *Zadvydas v. Davis*, 533 U.S. 678 (2001), namely, that an alien's detention is constitutionally suspect (1) where he has been detained at least six months and (2) where "*there is no significant likelihood* of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701 (emphasis added). Indeed, Justice Breyer, in his dissenting opinion in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018), addressing the constitutional question left unresolved by the majority, made this very point. He said: "[f]rom a constitutional perspective . . . [i]t is immaterial that detention here is not literally indefinite, because while the respondents' removal proceedings must end eventually, they last an indeterminate period of at least six months and a year on average, thereby implicating the same constitutional right against prolonged arbitrary detention that we recognized in *Zadvydas*." *Jennings*, 138 S. Ct. at 868 (Breyer, J., dissenting); *see also Sajous v. Decker*, No. 18-cv-2447, 2018 WL 2357266, at *9 (S.D.N.Y. May 23, 2018) ("[A]lthough the language of § 1226 technically ascribes an end point to all detention under the section by authorizing detention only until 'a decision on whether the alien is to be removed' is reached . . . aliens must have a remedy to redress such unreasonable detention through an as-applied challenge to continued detention."). Thus, whether described as indefinite detention, indeterminate detention, or detention of an uncertain length, the important point is (1) that Petitioner has been detained for 25 months and (2) that there is no clear end point to Petitioner's detention, which could last for years. *See, e.g.*, *Leke v. Hott*, -- F. Supp. 3d -- , 2021 WL 710727, at *4 (E.D. Va. Feb. 23, 2021) (describing detention of this sort as resembling indefinite detention); *see also Muse v. Sessions*, 409 F. Supp. 3d 707, 714–15 (D. Minn. 2018) (same).

duration of such detention approaches or exceeds two years and (2) the end to such detention is uncertain and not reasonably foreseeable. Other district judges in the Alexandria Division have reached similar conclusions.[6] Respondents, mindful of this case law, nonetheless oppose Petitioner's habeas petition, arguing in pertinent part that neither *Bah* nor *Leke* is dispositive here because those cases did not address whether a petitioner is entitled to more than one bond hearing. Thus, the narrow question presented by the Petition is whether the Fifth Amendment's Due Process Clause affords Petitioner the right to a current bond hearing before an Immigration Judge, given that Petitioner's detention has now lasted 25 months, has no certain end point, and that Petitioner has not had a bond hearing in 22 months.

## I.

Analysis of Petitioner's Fifth Amendment Due Process claim properly begins with the recognition that the Fifth Amendment, by its terms, applies here. This conclusion follows from the terms of the Fifth Amendment that state that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. Because a non-citizen is a "person," *Wong v. United States*, 163 U.S. 228, 237–38 (1896) and because detention of a person is a deprivation of that person's bodily "liberty," the sole and dispositive question presented here is whether the command of "due process" entitles Petitioner to another bond hearing.

Here, the parties agree that the relevant legal framework for determining the required "due process" is the three-part framework set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976). More specifically, this three-part framework requires consideration of:

>   (1) "the private interest that will be affected by the official action";
>
>   (2) "the risk of an erroneous deprivation of such interest through the

---

[6] *See, e.g.*, *Portillo v. Hott*, 322 F. Supp. 3d 699, 700 (E.D. Va. 2018) (Brinkema, J.) ("[R]espondents will be ordered to provide Rodriguez with an individualized bond hearing."); *Mauricio-Vasquez v. Crawford*, No. 1:16-cv-1422, 2017 WL 1476349, at *6 (E.D. Va. Apr. 24, 2017) (Trenga, J.) (same).

>procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and
>
>(3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Id.* at 335.

Quite clearly, the first *Mathews* factor strongly favors Petitioner. The private interest affected here—Petitioner's interest in bodily liberty—is undoubtably "the most significant liberty interest there is." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Indeed, in the specific context of immigration detention, the Supreme Court has explained that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Thus, there can be no doubt that Petitioner's interest in bodily liberty is a central consideration in the Fifth Amendment analysis under *Mathews*. Accordingly, the first part of the three-part *Mathews* test strongly supports Petitioner's claim for a current bond hearing.

The next question is whether or not the second *Mathews* factor—the probative value of additional procedural safeguards—supports Petitioner's claim for a current bond hearing. It does, for three reasons. First, consistent with *Zadvydas*, the Second Circuit has sensibly recognized that "'as the period of . . . confinement grows,' so do the required procedural protections no matter what level of due process may have been sufficient at the moment of initial detention." *Velasco Lopez*, 978 F.3d at 853 (citing *Zadvydas*, 533 U.S. at 701).[7] Thus, where, as here, Petitioner's

---

[7] This principle follows directly from the Supreme Court's recognition in *Zadvydas* that, after six months of presumptively reasonable detention, the government "must respond with evidence sufficient" to show a significant likelihood of removal and that the government's required showing increases "as the period of . . . confinement grows." *Zadvydas*, 533 U.S. at 701; *see also Borbot v. Warden Hudson Cty Correctional Facility*, 906 F.3d 274, 280 (3d Cir. 2018) (acknowledging that "despite an initial bond hearing, detention under § 1226(a) might become unreasonably

5

detention has now lasted 25 months—a period that is four times longer than the presumptively reasonable detention period set forth in *Zadvydas*—and the end to detention is uncertain, there is most certainly a heightened risk that Petitioner is being erroneously deprived of his strong interest in bodily liberty. Accordingly, Petitioner is entitled to a current bond hearing at which time the Immigration Judge may revaluate whether Petitioner's continued detention is appropriate or necessary in light of Petitioner's strong interest in bodily liberty. Second, Respondents necessarily must admit that subsequent bond hearings for detained non-citizens provide an important check against erroneous deprivations of liberty. This is so because the Department of Justice has enacted 8 C.F.R. § 1003.19(e), a regulation that provides non-citizens such as Petitioner the right to seek "subsequent bond redetermination[s]" before an Immigration Judge, thereby providing credence to the very position here that a current bond hearing is appropriate.[8] Thus, absent a bond hearing, there is a significant risk that Petitioner is being erroneously detained. Third, a subsequent bond hearing is particularly important here to protect against an erroneous deprivation of liberty because the Immigration Judge's one-page Order denying bail does not indicate whether she considered the explanation for Petitioner's previous non-appearance, namely, that he did not receive notice of the prior hearing. Therefore, it is appropriate (if not necessary) for the Immigration Judge to revisit at least her conclusion that Petitioner is a "Flight Risk." IJ Bail Decision at 2. Accordingly, the second part of the three-part *Mathews* test supports Petitioner's claim for a current bond hearing.

Finally, it is necessary to consider the third *Mathews* factor, including Respondents'

---

prolonged . . . [such that] the Due Process Clause might entitle an alien detained under § 1226(a) to a new bond hearing to conclude that [the alien's] due process rights were not violated.").

[8] There can be no doubt that 8 C.F.R. § 1003.19(e) applies here, as Petitioner's circumstances have changed materially since his last bond hearing on July 25, 2019. Specifically, Petitioner's circumstances have changed materially (1) because Petitioner has now been detained longer than the one-year statutory maximum for a DWI conviction under Virginia law and (2) because the Immigration Judge recently determined, on May 3, 2021, that Petitioner is eligible for withholding of removal and therefore is entitled to reside in the United States. And of course, before the Immigration Judge, Petitioner may proffer additional reasons as to why his circumstances have changed.

interests in orderly immigration proceedings and the administrative burden of conducting a bond hearing. Although the third *Mathews* factor would ordinarily favor Respondents, that cannot be the case here, as Petitioner's prolonged, indefinite, and unreasonable detention comports neither with the Fifth Amendment nor the ordinary operation of the INA. Importantly, Petitioner's detention has now lasted 25 months, a period that is four times longer than the presumptively reasonable detention period set forth in *Zadvydas*. Indeed, Petitioner's detention is far longer than the time period most criminals would be held without a current bond hearing. Such prolonged detention is especially problematic here because there is no clear end in sight to Petitioner's detention. Tellingly, at oral argument, Respondents' counsel was not able to answer the simple question: when will Petitioner's detention end? Respondents' counsel could not even provide a ballpark answer to this question, let alone rule out that Petitioner's detention would last no more than a certain number of years. Respondents' inability to answer this question is, quite frankly, disturbing. This is especially so because detention under § 1226(a) is purely discretionary. Indeed, as succinctly stated by one court of appeals, "[a]rbitrary civil detention is not a feature of our American government." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). It is also important to remember that Petitioner's habeas petition, like the petitions in *Bah* and *Leke*, focus not on immediate release from detention, but merely the opportunity to present a case for release to an Immigration Judge. If Respondents are as confident as they are now that Petitioner does not have a compelling case for release on bond, then the administrative burden of conducting a bond hearing is minimal and a hearing should be welcomed by Respondents to confirm their view. Thus, the third part of the three-part *Mathews* test, as the first two parts, favors Petitioner's claim for a current bond hearing. In sum, because Petitioner's detention has now lasted 25 months, has no certain end point, and 22 months have passed since his last bond hearing, the Fifth Amendment

compels the conclusion that Petitioner must be afforded a current bond hearing.[9]

Accordingly,

It is hereby **ORDERED** that Petitioner's Habeas Petition (Dkt. 1) is **GRANTED IN PART** and **DENIED IN PART**. Specifically,

- Petitioner's Habeas Petition is **GRANTED** in so far as it is **DECLARED** that Petitioner's now-extended 25-month detention violates the Fifth Amendment's Due Process Clause; and

- Petitioner's Habeas Petition is **GRANTED** in so far as Respondents must schedule a bond hearing before an Immigration Judge to occur on or before **June 3, 2021 at 10:00 a.m.** At the hearing, the Immigration Judge shall determine (i) whether Petitioner must continue to be detained pending the outcome of Petitioner's withholding of removal proceedings, if necessary, or (ii) whether Petitioner may be released on conditions that would reasonably assure Petitioner's appearance at subsequent immigration proceedings and the safety of the community.

- Petitioner's Habeas Petition is **DENIED** in all other respects.

It is further **ORDERED** that Respondents' Motion for Summary Judgment (Dkt. 11) is **DENIED**.

The Clerk is directed to provide a copy of this Order to all counsel of record and to place this matter among the ended causes.

Alexandria, Virginia
May 19, 2021

/s/
T. S. Ellis, III
United States District Judge

---

[9] Petitioner also seeks (1) an Order directing the Immigration Judge to apply a specific standard of proof at the bond hearing and to place the burden of proof on Respondents, (2) an Order directing the Immigration Judge to consider at the bond hearing Petitioner's ability to pay a bond, and (3) an award of attorneys' fees and costs under the Equal Access to Justice Act, 5 U.S.C. § 2412. It is inappropriate to direct the Immigration Judge (i) to apply a specific standard of proof, (ii) to place the burden of proof on Respondents, and (iii) to consider Petitioner's ability to pay a bond, where, as here, the existing law is unsettled. *See Guzman Chavez*, 940 F.3d 867, 882 (4th Cir. 2019) (noting, in passing, that the petitioner has the burden of establishing that they are eligible for bond); *see also Velasco Lopez*, 978 F.3d 842, 856 n.14 (2d Cir. 2020) (explaining that many courts require the government to justify detention by clear and convincing evidence). Moreover, the Immigration Judge is best suited to make these determinations in the first instance based on the existing authority.

Petitioner's request for attorneys' fees is also unwarranted, as it cannot be said that Respondents' position in this case was wholly without substantial justification in existing authority. *See Thomas v. Saul*, 816 F. App'x 835, 838 (4th Cir. 2020) (discussing standard for awarding attorneys' fees under the Equal Access to Justice Act).

8